UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

In re

ANDREW VELEZ CONSTRUCTION, INC.                Case No.  06-12765 (MG)


                              Debtor.          Chapter 11
-------------------------------------------------------x




## DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION







Dated:       Brooklyn, New York
             December 10, 2008


                              Ortiz & Ortiz, L.L.P.
                              Counsel to the Debtor and Debtor-In-
                              Possession
                              127 Livingston Street
                              Brooklyn, New York 11201
                              Tel. (718) 522-1117

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

In re

ANDREW VELEZ CONSTRUCTION, INC.,         Case No.  06-12765


                           Debtor.         Chapter 11
-------------------------------------------------------x


## DEBTOR'S THIRD AMENDED PLAN OF REORGANIZATION

       Andrew Velez Construction, Inc., the debtor and debtor-in-possession (the "Debtor"), proposes this First Amended Plan of Reorganization (the "Plan"), pursuant to section 1121(a) the Bankruptcy Code.

## ARTICLE I

## DEFINITIONS AND RULES OF CONSTRUCTION

1.00    Definition of Terms.

1.01       Administrative Claim:  means a Claim for any cost or expense of administration in connection with this Bankruptcy Case of a kind specified in Sections 502(f) and 503(b) of the Bankruptcy Code and referred to in Sections 507(a)(2) and 1114 of the Bankruptcy Code, including, without limitation, any actual and necessary cost and expense of preserving the Estate of the Debtor incurred after the Filing Date and up to Confirmation; any indebtedness or obligation incurred or assumed by the Debtor in connection with the ordinary conduct of its business; allowances of compensation for legal or other professional services and reimbursement of costs and expenses under Section 330(a) or 331 of the Bankruptcy Code or otherwise allowed by the Court; all costs of making distributions and providing notices and ballots with respect to the Plan; and all fees and charges assessed against the Estate under Chapter 123, Title 28, United States Code.

1.02       Administrative Creditor:  means a person or entity holding an Allowed Administrative Claim.

1.03       Adversary Proceeding:  means the adversary proceeding commenced in the bankruptcy case under Adversary Proceeding Number 07-1706 in the U.S. Bankruptcy Court for the Southern District of New York by the Debtor against Consolidated Edison Co. Of New York, Inc., and The Switzer Group.

1.04        <u>Allowed</u>:  when used in conjunction with the Claims or Class of Claims defined in this Plan, means a Claim or portion of a Claim: (i) which is scheduled by the Debtor pursuant to Sections 521(1) of the Bankruptcy Code, other than a Claim which is scheduled by the Debtor as disputed, contingent or unliquidated; or (ii) for which proof has been filed, pursuant to Section 501(a) of the Bankruptcy Code; or (iii) any Claim allowed pursuant to this Plan and, in each such case in (i) and (ii) above, as to which either (a) no objection to the allowance thereof has been interposed within the applicable period of time fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Court or (b) such an objection is so interposed and the Claim shall have been allowed by a Final Order and to the extent so allowed by the Court.  Notwithstanding the foregoing, Claims shall be Allowed to the extent that this Plan provides that they are deemed Allowed.

1.05        <u>Bankruptcy Case</u>:  means this Chapter 11 reorganization case, filed under Case No.06-12765, and commenced by the filing of the Debtor's voluntary chapter 11 petition with the Clerk of the Court on November 22, 2006.

1.06        <u>Bankruptcy Code</u>:  means Title 11 of the United States Code, 11 U.S.C. Sections 101, et seq., as amended.

1.07        <u>Bankruptcy Court or Court</u>:  means the United States Bankruptcy Court for the Southern District of New York, or any other court having jurisdiction over the Bankruptcy Case.

1.08        <u>Bankruptcy Rules</u>:  means the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules of the Bankruptcy Court, together with all amendments and modifications from time to time made thereto as prescribed under 28 U.S.C. Section 2075.

1.09        <u>Business Day</u>:  means any day other than a Saturday, Sunday or a "legal holiday," and as that term is defined in Bankruptcy Rule 9006.

1.10        <u>Cash</u>:  means cash and cash equivalents, including but not limited to, bank deposits, checks and other similar items and the Settlement Funds.

1.11        <u>Causes of Action</u>:  means, if any, all of the Estates legal and equitable interest in any claim, as that term is defined in Bankruptcy Code 101(5), against any individual or entity.

1.12        <u>Chapter 11</u>:  means Chapter 11 of the Bankruptcy Code.

1.13    Claim:  Any right to a payment from the Debtor, whether or not such right is reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, legal or equitable in nature, or secured or unsecured; and a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.14    Claimant:  means the holder of a Claim.

1.15    Class:  means a category of holders of Claims as provided for in Article II of this Plan.

1.16    Con Edison:  means the Consolidated Edison Company of New York, Inc.

1.17    Con Edison Stipulation:  means the Stipulation and Release of Claims entered into among the Debtor, Con Edison, and The Switzer Group, Inc., that settled the Adversary Proceeding and was so-ordered by the Bankruptcy Court by order dated August 15, 2008.  A copy of the Con Edison Stipulation is annexed hereto as Exhibit A.

1.18    Confirmation:  means the entry of an order by the Court confirming this Plan in accordance with Chapter 11.

1.19    Confirmation Date:  means the date upon which the Court enters an order confirming this Plan in accordance with Chapter 11.

1.20    Confirmation Order:  means the order entered by the Court confirming this Plan in accordance with Chapter 11.

1.21    Debtor:  means Andrew Velez Construction, Inc., as a debtor-in-possession.

1.22    Debtor's Professionals:  means the following professional firms: Ortiz & Ortiz, L.L.P., Debtor's Counsel, Arent Fox, LLP, former Special Counsel, and Castellano, Korenberg, & Co., the Debtor's accounting firm.

1.23    DIP Account:  means the bank account established by the Debtor as its Debtor-in-Possession bank account in this Bankruptcy Case.

1.24    Disallowed Claims:  means any Claim or portion thereof that has been disallowed by the Court by a Final Order.

1.25    Disbursing Account:  means the bank account that will be established after the Confirmation Date to disburse the payments provided for in the Plan.

1.26        Disbursing Agent:   means the Reorganized Debtor or its designated agent, who
            shall maintain the Disbursing Account.

1.27        Disclosure Statement:   means the disclosure statement, as may be amended or
            modified, that (I) relates to this Plan and (ii) as approved by the Bankruptcy Court
            under Section 1125 of the Bankruptcy Code, to the extent necessary.

1.28        Disputed Claims:   means (I) a Claim which is scheduled by the Debtor as
            disputed, contingent or unliquidated, or (ii) any Claim that is not Allowed, or (iii)
            any Administrative Claim filed by or asserted by a Professional or any other
            Administrative Creditor to which the Debtor files an objection with the Court, or
            (iv) any Claim which has been filed pursuant to Section 501(a) of the Bankruptcy
            Code and as to which an objection to the allowance thereof has been or will be
            interposed within the time limitation fixed by the Bankruptcy Code, by an order
            of the Court, or by this Plan, which objection has not been determined, in whole
            or in part, by a Final Order.

1.29        Effective Date:   means the date selected by the Debtor after Confirmation Date
            on which no stay of the Confirmation Order is in effect and all conditions
            specified in the Plan have been satisfied or waived by the Debtor.

1.30        Estate:   means the estate created in this Bankruptcy Case pursuant to Section 541
            of the Bankruptcy Code.

1.31        Executory Contracts:   means executory contracts and unexpired leases as
            described in Section 365 of the Bankruptcy Code.

1.32        Filing Date:   means November 22, 2006, the date the Debtor filed its voluntary
            bankruptcy petition with the Clerk of the Court.

1.33        Final Order:   means an order, ruling, or judgment that is in full force and effect,
            is not stayed, and is no longer subject to review, reversal, modification,
            amendment, appeal, or writ of certiorari.

1.34        General Unsecured Claim:   means any Claim other than a Priority Claim, a
            Priority Tax Claim, or an Administrative Claim.

1.35        Impaired:   means any Claim that is impaired within the meaning of section 1124
            of the Bankruptcy Code.

1.36        Lender:   means, collectively, Hudson Valley Bank, as successor in interest to
            New York National Bank, the Business Consortium Fund, Bank Hapoalim, and
            City National Bank of New Jersey.

1.37    Lender Claims:   means, collectively, the Lender Secured Claim and the Lender Unsecured Claim.

1.38    Lender Collateral:   means all of the assets of the Estate subject to the Lien of the Lender under the Pre-Petition Loan Documents.

1.39    Lender Secured Claim:   means the Claim belonging to the Lender secured by the Lender's Collateral.

1.40    Lender Stipulation:  means the Stipulation and Release of Claims that may be entered into among the Lender and the Debtor and that may be so-ordered by the Bankruptcy Court.

1.41    Lender Unsecured Claim:   means the Claim belonging to the Lender, in addition to the Lender Secured Claim, in the amount of Five Hundred Thirteen Thousand One Hundred Eighty Two Dollars ($513,182.00).

1.42    Lien:   shall have the meaning ascribed to such term in Bankruptcy Code Section 101(37).

1.43    Plan:   means this Chapter 11 Plan of Reorganization or as may be further amended or modified.

1.44    Pre-Petition Loan Documents:   means collectively (i) the Interest Bearing Grid Note dated March 29, 2002, in the original principal amount of $1,500,000 (as amended, restated, supplemented, or otherwise modified from time to time) (the "Note") which evidenced a $1,500,000 line of credit (the "Loan"), (ii) a Security Agreement-Assignment of Monies Due or to Become Due Under Contract or Sub-Contract Dated March 29, 2002 (as amended, restated, supplemented, or otherwise modified from time to time) (the "Assignment"), and (iii) a Continuing General Security Agreement dated March 29, 2002 (as amended, restated, supplemented, or otherwise modified from time to time) (the "Security Agreement"), and (iv) an Agreement of Modification of Loans dated September 14, 2005 (the "Modification Agreement"), and (v) all other agreements, instruments, and documents at any time executed and delivered in connection with the Loan, Assignment, and Modification Agreement, each as amended, restated, or supplemented or otherwise modified from time to time.

1.45    Priority Tax Claim:   means any Claim entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

1.46    Professional or Professionals:   means any professional person or entity as defined by Section 327(a) of the Bankruptcy Code.

1.47          <u>Property</u>:   means the Debtor's collective interest in all of its personal property, or in which the Debtor has an interest, including the Debtor's DIP Account, its furniture and fixtures, good will, and all causes of action to which the Debtor reserves the right to assert as the Reorganized Debtor, if any.

1.48          <u>Record Date</u>:   means the last date fixed pursuant to a Final Order of the Bankruptcy Court for the purpose of voting with respect to this Plan.

1.49          <u>Reorganized Debtor</u>:   means the Debtor immediately following the date upon which the Confirmation Order becomes a Final Order.

1.50          <u>Schedules</u>: means the schedules of assets and liabilities filed in the Bankruptcy Court in the Bankruptcy Case, as have been and may be further amended.

1.51          <u>Settlement Funds</u>: means the proceeds of the settlement of the Adversary Proceeding.

1.52          <u>Unclaimed Property</u>:   means any Cash that is unclaimed within sixty days after such Cash is distributed, and shall include: (I) checks, and the funds represented thereby, that have been returned as undeliverable; (ii) funds for checks that have not been paid or negotiated; and (iii) checks, and the funds represented thereby, that were not mailed or delivered because of the absence of a proper address to which to mail or deliver same.

1.53          <u>Unsecured Tax Claim</u>:   means any tax Claim that is a general unsecured Claim.

2.00    Rules of Construction

        For the purposes of this Plan, the following terms shall have the respective meanings as hereinafter set forth.  Such meanings are equally applicable to the singular and plural forms of the terms defined, unless the context requires otherwise.  Capitalized terms used in this Plan shall at all times refer to the terms as defined in this Article I.  A capitalized term used in this Plan which is not defined herein but is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or Bankruptcy Rules.  The words "herein", "hereof" and "hereunder" and other words of similar import refer to this Plan as a whole, including all exhibits and schedules, if any, annexed hereto, as the same may from time to time be amended or supplemented, and not to any particular article, section or subdivision contained in this Plan.

# ARTICLE II

## CLASSIFICATION OF CLAIMS

Claims are classified below pursuant to Bankruptcy Code section 1122. Administrative Claims and Priority Taxes have not been classified, pursuant to Bankruptcy Code section 1123(a)(1), and are treated in Article V of the Plan.

2.0     Classes of Claims.

2.01            Class 1 consists of the Lender Secured Claim.

2.02            Class 2 consists of All General Unsecured Claims, including Unsecured Tax Claims and the Lender Unsecured Claim.

2.03            Class 3 consists of the equity interest holders Lois Velez and Andrew Velez.

# ARTICLE III

## VOTING CLASSES OF CLAIMS IMPAIRED AND UNIMPAIRED UNDER THE PLAN; PLAN ACCEPTANCE

3.00            Any Class of Claimants impaired under the Plan is entitled to vote to accept or reject this Plan. Pursuant to Bankruptcy Code section 1126(c), a Class of Claims shall have accepted the Plan if at least two thirds in amount and more than one half in number of the Claimants that timely and properly voted to accept or reject the Plan in fact voted to accept the Plan. Classes 1 and 2 are impaired and entitled to vote to accept or reject the Plan.

# ARTICLE IV

## TREATMENT OF CLASSES UNDER THE PLAN

4.00            Class 1:  Lender Secured Claim:  The Lender Secured Claim shall be deemed an Allowed Claim in the amount of Seventy-Five Thousand Dollars ($75,000.00). Subject to the terms herein, and unless the holder of the Lender Secured Claim agrees to receive other less favorable treatment, on or before the Effective Date such holder of an Allowed Claim in this Class shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Claim, the sum of Seventy Five Thousand Dollars ($75,000) from the Settlement Funds. Such payment shall satisfy in full the Lender Secured Claim.

4.01        Class 2:  General Unsecured Claims

In full and final satisfaction of all Allowed General Unsecured Claims, each Claimant in Class 2 shall receive a pro rata distribution of Twenty-Five Thousand Dollars ($25,000) of the Settlement Funds on the Effective Date or as soon thereafter as practical.  The Lender Unsecured Claim of the Lender shall be deemed an Allowed Claim in the amount of Five Hundred and Thirteen Thousand One Hundred and Eighty Two Dollars ($513,182.00) and shall be deemed a General Unsecured Claim.

4.02        Class 3:   Allowed Shareholder Interests

The Class Three Shareholders, Andrew and Lois Velez, shall receive no payment or distribution of money or property under the Plan. The Class Three Shareholder's legal, contractual and equitable rights shall not be altered, changed or modified and shall retain their respective interests in the Reorganized Debtor.


# ARTICLE V

## TREATMENT OF UNCLASSIFIED CLAIMS

5.00        Administrative Claims

Administrative Creditors, other than the Claims of Professionals, shall receive on the Effective Date, or as soon as practicable thereafter, either a) Cash equal to one hundred percent of such Claimant's Allowed Administrative Claim, or b) payment on such other terms as may be agreed upon by such Claimants and the Debtor. The Administrative Claims that are incurred after the Confirmation Date shall be paid by the Reorganized Debtor when due or as soon as practicable thereafter, at the option of the Reorganized Debtor, without an order of the Court, subject to the provisions of the Plan.  Any Claim for an indebtedness or obligation incurred or assumed by the Debtor in connection with the ordinary conduct of its business shall be paid pursuant to the terms and conditions of the transaction giving rise to such Claim.

All quarterly fees due to the United States Trustee shall be paid in full by the Confirmation Date.  All quarterly fees that accrue thereafter will be paid by the Reorganized Debtor until the Bankruptcy Court enters a final decree.

5.01           Administrative Claims of Debtor's Professionals

The Claims of Debtor's Professionals shall be fixed by the Court pursuant to Bankruptcy Code section 330. The Allowed Claims of Debtor's Professionals accrued on or prior to the Effective Date shall be paid by the Debtor pursuant to the terms of any agreement entered into between the Professional and the Debtor and/or pursuant to Court Order. Any fees incurred by the Debtor's Professionals subsequent to the Effective Date shall be paid by the Reorganized Debtor. Once the Claims of Professionals are determined by Court Order, the Debtor shall distribute Seventy-Five Thousand Dollars ($75,000.00) from the Settlement Funds on or before the Effective Date, pursuant to Court Order, to satisfy those claims. The balance of the fees awarded by the Court will be paid in full pursuant to Court Order, or pursuant to an agreement between the Reorganized Debtor and the Professionals, but in no event later than 20 months from the Effective Date.

# ARTICLE VI

## IDENTIFICATION OF CLASSES OF CLAIMS IMPAIRED
## AND NOT IMPAIRED

6.00           Each Class of Claims that is Impaired may vote for or against the Plan pursuant to Section 1126(f) of the Bankruptcy Code. Each Class of Claims that is unimpaired is deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f). Classes 1 and 2 are impaired by the Plan.

# ARTICLE VII

## PROVISIONS CONCERNING DISTRIBUTIONS

7.00           Time of Distributions Under the Plan.

Class One and Class Two Claimants shall be paid in full on or before the Effective Date, or soon thereafter, from the Settlement Funds. The Claims of the Debtor's Professionals shall be paid Seventy-Five Thousand Dollars ($75,000.00) from the Settlement Funds pursuant to Court Order as soon as practicable. The balance of the Claims of the Debtor's Professionals will be paid pursuant to Court Order entered by the Court pursuant to 11 U.S.C. § 330 and or by agreement with the Debtor's professionals but, in no event, later than 20 months from the Effective Date.

7.01        Manner of Payments Under the Plan.

Payments to be made by the Debtor pursuant to this Plan shall be made by check from an attorney escrow account held by Debtor's Counsel Ortiz & Ortiz, L.L.P. and from the Debtor's Debtor-in-Possession account. Any payments due to creditors subsequent to the Effective Date shall be made by the Reorganized Debtor as may be agreed upon by the Reorganized Debtor and the Claimant.

7.02        Fractional Cents.

Any other provision of this Plan to the contrary notwithstanding, no payments of fractions of cents will be made. Whenever any payments of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent.

7.03        Unclaimed Property.

Except as otherwise provided herein, in the event and at such time as any distribution under this Plan becomes Unclaimed Property, then the person or entity to which such distribution was to have been made shall forfeit all rights thereto, and to any and all future payments under the Plan, and the Claim in respect of which such distribution was to have been made shall be treated as a Disallowed Claim not subject to Section 502(j) of the Bankruptcy Code. In this regard, distribution to Claimants entitled thereto shall be sent to their last known address set forth on a proof of claim filed with the Court or if no proof of claim is filed, on the schedules filed by the Debtor, or to such other address as may be designated by a Claimant pursuant section 17.02 of the Plan.

7.04        Disputed Payments or Distributions.

In the event of any dispute between or among Claimants as to the right to receive or retain any payment or distribution to be made to such entity or person under this Plan, including the entity or person asserting the right to receive the disputed payment or distribution, the Disbursing Agent shall retain in the Disbursing Account an amount of funds sufficient to satisfy the disputed amount, until the entry of a Final Order resolving the dispute or until the parties to such dispute may agree otherwise.

# ARTICLE VIII

## PROVISIONS CONCERNING DISCHARGE AND PROPERTY

8.00      <u>Discharge of Claims</u>.

Except as otherwise provided in this Plan and the Confirmation Order, and subject to the occurrence of the Effective Date, the rights afforded in this Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever, including any Claim that arises before the Confirmation, against the Debtor, the Reorganized Debtor or its assets or Property, including any debt of the kind specified in Bankruptcy Code sections 502(g), 502(h) or 502(I), whether or not such Claim is Allowed, and whether or not the Holder of such Claim has voted on this Plan or voted to accept or reject this Plan.

Except as otherwise provided in this Plan and the Confirmation Order, and subject to the occurrence of the Effective Date, the distributions and rights that are provided in this Plan shall be in complete satisfaction, discharge and release of all Claims and Causes of Action against, liabilities of, liens on, charges, encumbrances, security interests, obligations of and interests in the Debtor and the  Reorganized Debtor and any property of the Debtor and the Reorganized Debtor, whether known or unknown, regardless of whether a proof of Claim was filed, whether or not Allowed and whether or not the Holder of the Claim has voted on this Plan, or voted to accept or reject this Plan, or based on any act or omission, transaction or other activity or security, instrument or other agreement of any kind or nature occurring, arising or existing prior to the Effective Date that was or could have been the subject of any Claim.

8.01      <u>Vesting of Property</u>.

To the extent not provided herein, on the Effective Date, title to the Property of the Debtor not distributed to Creditors or placed in the Disbursing Account shall vest in the Reorganized Debtor and be assumed by the Reorganized Debtor after the Effective Date, or shall be conveyed or distributed under this Plan free and clear of all Claims of Creditors, except as otherwise provided in this Plan. Except as otherwise provided in this Plan, Confirmation of this Plan shall be binding and the Debtor's debts shall be discharged as provided in section 1141 of the Bankruptcy Code.

# ARTICLE IX

## EFFECT OF THE PLAN ON CLAIMS

9.00        <u>Injunction</u>.

In implementation of the discharge provided in Section 8.00 hereof, except as otherwise expressly provided in this Plan (including obligations in respect of Claims as at the Effective Date and including Section 8.00 hereof), the Confirmation Order shall provide, among other things, that all entities or persons who have held, hold, or may hold Claims, including Claims that arise before Confirmation, against the Debtor are permanently enjoined on and after the Effective Date: (i) from commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind with respect to any such Claim against the Debtor or the Reorganized Debtor or Property of the Debtor or the Reorganized Debtor (ii) from the enforcement, attachment, collection or recovery by any manner, directly or indirectly, of any judgment, award, decree, or order against the Debtor or the Reorganized Debtor or the Property of the Debtor, with respect to any such Claim, (iii) from creating, perfecting or enforcing, directly or indirectly, any encumbrance of any kind against the Debtor, or against the Property of the Debtor with respect to any such Claim, (iv) from asserting, directly or indirectly, any set off, right of subrogation, or recoupment of any kind against any obligation due the Debtor and (v) from any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan.  Nothing in this Plan shall (a) prohibit the holder of a timely filed Claim to which the Debtor has timely filed an objection from litigating its right to seek to have such Claim declared an Allowed Claim or (b) enjoin or prohibit the enforcement by any Claimant of any of the obligations of the Debtor or Reorganized Debtor under this Plan.  Nothing in the Plan shall be construed as affecting or discharging the personal liability of the officers and shareholders of the Debtor or Reorganized Debtor for any debts discharged pursuant to the Plan, including any liability for federal, state, and local taxes.

No injunctive provisions of the Plan and of the Confirmation Order shall enjoin or limit any claims or causes of action of the Lender against any guarantor of the debts, obligations and liabilities of the Debtor to the Lender.

# ARTICLE X

## RELEASES AND TERMINATION

10.00       <u>Releases and Limitations of Liability Regarding the Debtor</u>

On or after the Confirmation Date, no officer, director, or agent of the Debtor or Reorganized Debtor, or any attorney, accountant, or professional employed by any of those persons (collectively, "Exculpated Persons"), shall have or incur any liability to any person or entity for any Claim arising from any past or present actions taken or omitted to be taken under or in connection with, related to, effecting, or arising out of the Debtor's operations after the Petition Date or the Chapter 11 Case, the pursuit of Confirmation, and the formulation, preparation, dissemination, implementation, administration, Confirmation, or consummation of the Plan and accompanying Disclosure Statement, including the making of any payments under the Plan or taking any other actions in connection with the Plan. Such exculpation shall not apply to actions or omissions arising out of gross negligence or willful misconduct.

All persons, holders of Claims, entities, and parties-in-interest receiving payments under the Plan may not assert a Claim against such Exculpated Persons for any and all causes of action arising out of or in connection with the Reorganized Debtor's discharge of the powers and duties conferred upon it by the Plan or any order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan or applicable law. Such exculpation shall not apply to actions or omissions arising out of gross negligence or willful misconduct. No current holder of a Claim or representative thereof shall have or pursue any cause of action (i) against the Reorganized Debtor for making payments in accordance with the Plan, or for implementing the provisions of the Plan, or (ii) against any holder of a Claim for receiving or retaining Distributions or other payments as provided for by the Plan. The release provided herein does not extend to any personal liability of the Debtor's or Reorganized Debtor's officers and shareholders for Claims, including any claims for federal, state, and local taxes.

No release or exculpation provision of the Plan and of the Confirmation Order shall be construed as a release of, or affect or limit in any way, the Lender's rights to assert any and all claims or causes of action against any guarantor of the debts, obligations an liabilities of the Debtor to the Lender. The Lender and any such guarantor expressly reserve all of their respective rights, remedies and defenses in connection with the guaranteed obligations and at law.

10.01     Releases and Limitations of Liability Regarding Con Edison

On the Effective Date, to the fullest extent permissible under applicable law (as such applicable law may be extended after the Effective Date), in consideration for the distributions received under the Plan, each entity that has received any such distribution, including the Lender, will be deemed to forever release, waive and discharge Con Edison and its shareholders, members, officers, directors, employees, representatives, consultants, architects, engineers, contractors (including, without limitation, S. DiGiacomo & Son, Inc.), inspectors, attorneys, agents, affiliates, and any entity or person who furnished materials or provided services in connection with the design, construction or completion of the construction project at Con Edison's property located at 222 1st Street, Brooklyn, New York (the "Project") (collectively, the "Con Edison Released Parties") from any and all claims, demands, obligations, change order or extra work requests, causes of action, suits, accounts, liens, debts, assignments, invoices, damages and liabilities, of any nature whatsoever, whether known or unknown, whether sounding in tort, contract or otherwise, whether anticipated or unanticipated, whether contingent or matured, both in law and in equity which such entity had, now has, or may have in the future, arising from or in any way relating to the Project or any work performed in connection therewith that are based in whole or in part on any act or omission, event or occurrence taking place on or prior to the Effective Date. The Confirmation Order shall permanently enjoin the commencement or prosecution by any entity that will have received distribution under the Plan, whether directly or indirectly, of any claim, suit, demand, cause of action or liability release by the preceding sentence.

10.02     Debtor's Release of the Lender

The Debtor, on its own behalf and on behalf of its predecessors, successors, and assigns, irrevocably and unconditionally fully, finally, and forever releases and discharges Lender and all of the predecessors, subsidiaries and affiliates of the Lender, and all of the present and former directors, officers, employees, financial advisors, attorneys, agents, successors and assigns of the Lender and such predecessors, subsidiaries and affiliates (collectively, the "Releasees"), from any and all demands, claims, liabilities, responsibilities, disputes, actions, or cause of action (whether at equity or law) and obligations of any nature whatsoever, whether liquidated or unliquidated, known or unknown, matured or unmatured, fixed or contingent, which each ever had, now has, or may ever have, or claim to have, now or in the future against the Releasees, or any of them, arising at any time from the beginning of the world through the Effective Date.

10.03        Termination of Indebtedness, Liens, and Judgments.

Except as otherwise provided for in this Plan, upon the Effective Date, all instruments evidencing indebtedness of the Debtor impaired by the Plan shall be deemed canceled as against the Debtor, including any and all liens or judgments obtained against the Debtor for any Claim that arose prior to the Confirmation Date.

10.04        Rights If Plan Not Confirmed.

If Confirmation of this Plan does not occur, this Plan shall be deemed null and void, and in such event nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other entity or to prejudice in any manner the rights of the Debtor or any entity in any further proceedings involving the Debtor, and no statement contained in this Plan shall constitute an admission of any fact by the Debtor in any further proceedings involving the Debtor.

10.05        Termination of Litigation.

Any motion or adversary proceeding commenced by or against the Debtor regarding the Debtor or its Property shall be deemed dismissed with prejudice as part of the Plan, including the Adversary Proceeding.

# ARTICLE XI

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

11.00        Assumption and Rejection of Executory Contracts and Unexpired Leases.

All Executory Contracts to which the Debtor is a party are deemed assumed by the Reorganized Debtor as of the Effective Date, except those Executory Contracts listed in Exhibit B to this Plan or previously rejected by Order of the Bankruptcy Court in accordance with Bankruptcy Code Section 365. If applicable, Exhibit B shall be served upon all parties to the rejected Executory Contracts prior to the Effective Date. The Executory Contracts listed in Exhibit B to the Plan are deemed rejected pursuant to Bankruptcy Code section 365. The Debtor and the Reorganized Debtor shall have the right, at any time prior to ninety days after the Effective Date, to amend Exhibit B; any Executory Contract added to or deleted from Schedule Exhibit B will be assumed or rejected, respectively as of the date of such amendment.

11.01    Cure of Defaults.

All payments that may be required to cure any default under an Executory
Contract that is assumed under this Plan under Bankruptcy Code Section
365(b)(1) shall be made by the Debtor or the Reorganized Debtor.  In the event of
a dispute regarding the amount of any cure payment, the ability of the
Reorganized Debtor to provide adequate assurance of future performance, or any
other matter pertaining to the assumption, the Debtor or the Reorganized Debtor
shall make such cure payments required by Code Section 365(b)(1) following the
entry of a Final Order resolving such dispute.  The Reorganized Debtor shall cure
all other defaults existing under any Executory Contract which is assumed under
this Plan.

11.02    Claim for Damages.

Any party to an Executory Contract that is rejected pursuant to Section 11.01
shall be entitled to file, no later than thirty days after such rejection, a proof of
claim for damages alleged to arise from the rejection of such Executory Contract.
Objections to any proof of claim shall be filed by the Debtor or Reorganized
Debtor no later than sixty days after such proof of claim is filed, and the Court
shall resolve any such objections.  Payment of such Claim shall be made on the
later of (i) ten Business Days after the expiration of the ninety-day period for
filing an objection to such proof of claim filed and (ii) ten Business Days after the
Claim has been Allowed by a Final Order, provided that no such payments shall
be made before the Effective Date.

11.03    Classification of Claims.

Allowed Claims arising out of the rejection of an Executory Contract shall be
Class 2 Claims.


**ARTICLE XII**

PROCEDURES FOR RESOLVING DISPUTED CLAIMS OR INTERESTS

12.00    Time Limit for Objections to Claims or Interests.

Objections to Disputed Claims shall be filed by the Debtor or Reorganized Debtor
with the Court and served upon each holder of each of the Claims and Interests to
which objections are made not later than ninety (90) days subsequent to the
Effective Date or within such other time period as may be fixed by the Court.

12.01    Resolution of Disputed Claims.

The Reorganized Debtor is authorized to litigate to judgment, settle, or withdraw objections to Disputed Claims, or negotiate and accept different terms with holders of Allowed Claims in its sole discretion.

12.02    Payments to Claimants with Disputed Claims.

Payments and distributions to each holder of a Disputed Claim that ultimately becomes an Allowed Claim shall be made in accordance with the provisions of this Plan with respect to the Class of Creditors to which the holder of such Allowed Claim belongs. No payments or distributions of a Disputed Claim shall be made until such dispute is resolved by a Final Order or settlement. In the event that the Effective Date occurs prior to the sixtieth day after the Confirmation Date and a distribution is not made on the Effective Date to a Creditor, that Creditor shall be deemed to hold a Disputed Claim. In the event a Disputed Claim becomes an Allowed Claim after the first Effective Date's first payment, said Allowed Claim shall be paid consistent with the payments received by holders of other Claims in the Class into which such Claim falls commencing on the next distribution date under the Plan.

12.03    Retention of and Enforcement of Causes of Action.

The Reorganized Debtor shall retain the exclusive right to exercise its discretion to enforce against any person or entity any and all Causes of Action of the Debtor, including all Causes of Action of a trustee or debtor-in-possession under the Bankruptcy Code, other than those Claims or Causes of Action released or compromised under this Plan.

# ARTICLE XIII

## MEANS FOR EXECUTION OF THIS PLAN

13.00    The Debtor and the Reorganized Debtor shall satisfy its obligations from the Cash it maintains on hand on the Effective Date and the Settlement Funds.

# ARTICLE XIV

## ADMINISTRATIVE PROVISIONS

14.00    Further Documents and Action.

On or before the Effective Date, the Debtor is authorized to file with the Bankruptcy Court such agreements and other documents, and take or cause to be

taken such action, as may be necessary or appropriate to effect and further evidence the terms and conditions of this Plan.

14.01     Automatic Stay.

The Debtor and all of the Debtor's Property shall be subject to the exclusive jurisdiction of the Bankruptcy Court until such time as the Plan is fully effectuated. Until such time as all such Property has been distributed in accordance with this Plan and this case is closed pursuant to Section 362(c)(2)(A) of the Bankruptcy Code, all such Property shall be protected by the automatic stay under Section 362(a) of the Bankruptcy Code.

14.02     Fiscal Year and Effective Date For Accounting Purposes.

The Reorganized Debtor's fiscal year end shall be deemed, for accounting and tax purposes, September 30th. The Effective Date of the Plan shall be deemed, for tax and accounting purposes, as September 30, 2008.


# ARTICLE XV

## RETENTION OF JURISDICTION

15.00     Retention of Jurisdiction.

Following the Confirmation Date, the Court shall retain jurisdiction of this proceeding and of all matters arising under or out of the Bankruptcy Case, including, without limitation, for the following purposes:

15.00.1     to hear and determine any objections to the allowance of Claims;

15.00.2     to determine any and all applications for compensation for Professionals;

15.00.3     to determine any and all pending applications for the rejection or assumption or for the assumption or assignment, as the case may be, of Executory Contracts to which the Debtor is a party or with respect to which it may be liable, and to hear and determine, and if need be to liquidate, any and all Claims arising therefrom or to resolve any dispute regarding the assumption, rejection or alleged defaults of the Unexpired Leases or Executory Contracts;

15.00.4     to determine any and all applications, adversary proceedings, and contested or litigated matters before the Court and pending on or made after the Confirmation Date, including adversary

proceedings to collect the Debtor's Property and claims of the Debtor;

15.00.5      to modify this Plan pursuant to Section 1127 of the Bankruptcy Code or to remedy any defect or omission or reconcile any inconsistency in the Confirmation Order;

15.00.6      to hear and determine all controversies, suits and disputes, if any, as may arise in connection with the interpretation or enforcement of this Plan, the Confirmation Order, and any other documents executed and delivered in connection with this Plan;

15.00.7      to hear and determine all controversies, suits and disputes, if any, as may arise with regard to orders of this Court in the Bankruptcy Case and any and all controversies and disputes arising under, or in connection with, this Plan;

15.00.8      to adjudicate all controversies concerning the classification of any Claim;

15.00.9      to liquidate damages in connection with any disputed, contingent or unliquidated Claims;

15.00.10     to adjudicate all Claims, the security thereof or ownership in any Property of the Debtor or in any proceeds thereof;

15.00.11     to recover all assets and Property of the Debtor wherever located, including the prosecution and adjudication of all causes of action available to the Reorganized Debtor;

15.00.12     to determine all questions and disputes regarding recovery of and entitlement to the Debtor's Property and determine all claims and disputes between the Debtor, and any other Entity, whether or not subject to an action pending as of the Confirmation Date;

15.00.13     to enter any order, including injunctions, necessary to enforce the title, rights and powers of the Debtor and to impose such limitations, restrictions, terms and conditions on such title, rights and powers as the Court may deem necessary or appropriate;

15.00.14     to enter an order or final decree closing and terminating the Bankruptcy Case; and

15.00.15     to enter an order, after notice and a hearing, determining the appropriate amount of compensation due to professionals;

15.00.16    to make such orders as are necessary or appropriate to carry out the provisions of this Plan, including but not limited to orders interpreting, clarifying or enforcing the provisions thereof and/or the Confirmation Order.

# ARTICLE XVI

## REQUEST FOR APPLICATION OF BANKRUPTCY CODE SECTION 1129(b)

16.00    In the event a Class of Creditors is deemed to be Impaired and does not accept the Plan, the Debtor hereby requests to amend the Plan and have the Bankruptcy Court find that the provisions of this Plan provide fair and equitable treatment to all Classes and that the Plan is in the best interest of the creditors of the Debtor and that the Bankruptcy Court confirm this Plan, notwithstanding the requirements of Section 1129(a)(8) of the Bankruptcy Code.

# ARTICLE XVII

## GENERAL PROVISIONS

17.00    Modification of the Plan.

The Debtor reserves the right, in accordance with the Bankruptcy Code, to seek to withdraw, amend or modify this Plan before or after the Confirmation Date.

17.00    Notice.

All notices, requests, elections or demands in connection with this Plan, including any change of address of any Claimant for the purposes of receiving distributions under this Plan and forfeiting same pursuant to Section 7.04 hereof, shall be in writing and shall be deemed to have been given when received or, if mailed, five (5) days after the date of mailing provided such writing shall have been sent by registered or certified mail, postage prepaid, return receipt requested, and if sent to the Debtor, addressed to:

Andrew Velez, President
Andrew Velez Construction, Inc.
74-16 Grand Avenue
East Elmhurst, New York 11373

and with a copy to:

Norma E. Ortiz, Esq.
Ortiz & Ortiz, L.L.P.
127 Livingston Street

Brooklyn, New York 11201

All notices and requests to Claimants or holders of Interests of any Class shall be sent to them at their last known address. The Debtor, and any Claimant and holder of Interest of any Class, may designate in writing any other address for purposes of this Section, which designation shall be effective upon receipt.

17.02    <u>Headings</u>.

The headings used in this Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the provisions of this Plan.

17.03    <u>Severability</u>.

Should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Plan.

17.04    <u>Governing Law</u>.

Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of New York.

17.05    <u>Successor and Assigns</u>.

The rights and obligations of any entity or person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Entity.

17.06    <u>Reservation of Rights</u>.

Nothing contained herein shall prohibit the Debtor or Reorganized Debtor from prosecuting or defending any of its rights as may exist on its own behalf.

17.07    <u>Withdrawal, Revocation, Modification, or Amendment of Plan</u>.

The Debtor reserves the right to revoke, withdraw, modify, or amend this Plan at any time prior to or subsequent to the entry of the Confirmation Order, as permitted by the Bankruptcy Code and Bankruptcy Rules.

17.08    Binding Effect of this Plan.

This Plan shall be binding upon and inure to the benefit of the Reorganized Debtor, any person or entity bound by the provisions of this Plan under Bankruptcy Code section 1141, and their respective predecessors, successors, assigns, agents, partners, officers, and directors.

17.09    Conflicts.

The terms of the Plan shall control in the event there is any conflict, inconsistency, or discrepancy between the Plan and Disclosure Statement.

## ARTICLE XVIII

## CONDITIONS TO CONFIRMATION

(a)    The Confirmation Order shall have become a Final Order.

(b)    All requirements of any federal, state or local laws, ordinances or regulations that must be satisfied in connection with the consummation of the Plan shall be satisfied.

Dated:   New York, New York
         Dec. 10, 2008

by:      _s/Andrew Velez_____

         Andrew Velez, President
         Andrew Velez Construction, Inc.
         74-16 Grand Avenue
         East Elmhurst, New York 11373

Counsel to the
Debtor and Debtor-in-Possession

_s/Norma E. Ortiz_____
Norma E. Ortiz (NO 4748)
Ortiz & Ortiz, L.L.P.
127 Livingston Street
Brooklyn, New York 11201
Tel. (718) 522-1117

**Exhibit A**
(Con Edison Stipulation)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re

ANDREW VELEZ CONSTRUCTION, INC.,          Case No.  06-12765 (MG)


                     Debtor.          Chapter 11
--------------------------------------------------------X
ANDREW VELEZ CONSTRUCTION, INC.

                Plaintiff,          Adv. Proc. No. 07-01706 (MG)


     - against -

CONSOLIDATED EDISON COMPANY OF
NEW YORK, INC. and
THE SWITZER GROUP, INC.

                Defendants
--------------------------------------------------------X

## STIPULATION OF SETTLEMENT AND RELEASE OF CLAIMS

     This settlement agreement and release of claims (the "Agreement") by and among

Andrew Velez Construction, Inc., as debtor and debtor-in-possession (the "Debtor") in the

above-captioned bankruptcy case (the "Case"), Consolidated Edison Company of New York,

Inc. ("Con Ed"), and The Switzer Group, Inc. ("Switzer" and, together with Con Ed, the

"Defendants") sets forth the terms and conditions upon which the Debtor and the Defendants

(collectively referred to as the "Parties") have agreed to settle certain issues that have arisen in

the Case.

## RECITALS

     1.      Con Ed is the fee owner of the real property located at 222 1st Street, Brooklyn,

New York (the "<u>Property</u>"), commonly known as Con Ed's Third Avenue Yard Facilities.

2.      On or about October 4, 2001, Con Ed and the Debtor entered into a written agreement known as Purchase Order No. 128355 (as modified and supplemented from time to time, the "<u>Contract</u>"), whereby Velez agreed to furnish certain work, labor, supervision, services, materials and equipment, and act as the general contractor to renovate and reconstruct the Property (the "<u>Project</u>").  The Contract was modified, inter alia, by the Modification Implementing Settlement and Release, dated June 29, 2006.

3.      Switzer performed architectural services in connection with the Project.

4.       The Debtor entered into subcontracts with various subcontractors and suppliers (the "<u>Subcontractors</u>") for certain work, labor, services and material to be furnished by such Subcontractors.  Many of the Subcontractors eventually filed mechanics' and similar liens against the Property (the "<u>Liens</u>").

5.      On November 22, 2006, before the Project was completed, the Debtor filed the Case in the U.S. Bankruptcy Court for the Southern District of New York (the "<u>Court</u>").  The Debtor has managed its affairs pursuant to Bankruptcy Code sections 1107 and 1108.

6.      In December 2006, Con Ed moved the Court for, among other things, an order compelling the Debtor to assume or reject the Contract pursuant to Bankruptcy Code Section 365.  An order rejecting the Contract was entered by the Court on January 31, 2007.

7.      On or before September 25, 2007, Con Ed filed a timely proof of claim in the Case  ("<u>Claim No. 30</u>") asserting claims for damages based on the Debtor's anticipated rejection of the Contract in an aggregate liquidated amount of $18,960,535 plus further unliquidated amounts.  Claim No. 30 consists of amounts expended and to be expended by Con Ed on the

completion of the Project, including the costs of retaining another general contractor to complete the Project, as well as amounts expended on redeeming certain of the Liens.

8.      Upon redeeming some of the Liens, Con Ed received an assignment of the proofs of claim filed by those Subcontractors that had filed such Liens against the Property (the "Assigned Claims" and together with Claim No. 30, "Con Ed's Claims").

9.      On or about June 5, 2007, the Debtor commenced the above-captioned adversary proceeding against the Defendants (the "Adversary Proceeding").  In its Amended Complaint, the Debtor has asserted a variety of causes of action against each Defendant and sought substantial damages.  Each Defendant filed an Answer in the Adversary Proceeding, (a) Con Ed asserting substantial counterclaims against the Debtor and (b) Switzer asserting certain cross claims against Con Ed (the "Cross-Claim").  References hereafter to the Adversary Proceeding shall include the Cross-Claim, and all other claims, counterclaims and cross claims  (collectively, the "Adversary Proceeding Claims") asserted by the Parties against one another in the Adversary Proceeding, including all Adversary Proceeding Claims that were dismissed, all Adversary Proceeding Claims that survived motions to dismiss, and all Adversary Proceeding Claims that could have been brought as part of the Adversary Proceeding.

10.     Thereafter, the Parties engaged in an effort to settle the Adversary Proceeding, including formal mediation between the Debtor and Con Ed that took place on February 20, 2008.

11.     The Debtor is in need of funds to satisfy its operating expenses in order to remain operational, as well as to fund a plan of reorganization in the Case (the "Plan").

12.     In consideration of the mutual promises, covenants, and obligations set forth

below, and for other good and valuable consideration as stated herein, the sufficiency of which is hereby acknowledged, the Parties agree and stipulate as follows:

## **AGREEMENT**

13.     The recitals set forth above are incorporated herein by reference.

14.     On or as soon as practicable after the Agreement Effective Date (as defined below), in full and final satisfaction of all claims asserted by the Debtor in the Adversary Proceeding, Con Ed shall transfer to the Debtor's account indicated to it by the Debtor Two Hundred and Eighty-Five Thousand Dollars ($285,000.00) (the "Settlement Amount"), to be used by the Debtor to fund the Plan.  The Debtor intends to utilize the Settlement Amount as follows:

    a.     Seventy-Five Thousand Dollars ($75,000.00) to pay the claims of the Debtors' prepetition bank lenders;

    b.     Twenty-five Thousand Dollars ($25,000.00) to pay the claims of all general unsecured non-priority creditors.

    c.     One Hundred and Ten Thousand Dollars ($110,000.00) to pay the cost of insurance premiums and related operational costs.

    d.     Seventy-five Thousand Dollars ($75,000.00) to pay the Debtor's court-retained professionals for fees and expenses incurred.

15.     The Settlement Amount shall represent final payment in accordance with Article 4(G) of Con Ed's Standard Terms and Conditions of Construction Contracts, which are incorporated into the Contract.

16.     Upon the Agreement Effective Date, (a) the Amended Complaint shall be deemed

automatically withdrawn, and the Adversary Proceeding (and all Adversary Proceeding Claims, including, without limitation, the Cross-Claim) shall be deemed to be dismissed with prejudice and without costs to any Party, and (b) all mechanics liens filed by the Debtor against the Property shall be automatically released. Notwithstanding the foregoing, the Debtor shall make all the necessary filings to (a) have the Adversary Proceeding dismissed and (b) have the foregoing liens released.

17. Con Ed (a) agrees to vote the full amount of the Con Ed's Claims in favor of the Plan and (b) subject to the occurrence of the Agreement Effective date, waives its right to receive any distribution on account of the Con Ed's Claims under the Plan.

18. The Debtor shall include in any Plan it will submit to the Court, as consideration for Con Ed's funding of the Plan, a provision providing a full and complete release of the Con Ed Released Parties (as defined below) by all parties receiving any distribution under the Plan and an injunction prohibiting any such parties from bringing any claims or causes of action against the Con Ed Released Parties. The Debtor shall (a) submit for Con Ed's prior approval any language in the Plan to this effect, and (b) make every effort to obtain the confirmation of the Plan containing such release and injunction.

19. The Parties understand and acknowledge that this Agreement is subject to Court approval and shall become final and binding upon the Parties only on the Agreement Effective Date. The Debtor agrees to promptly file a motion seeking the Court's approval of the Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019.

20. This Agreement shall become effective on the first date (the "Agreement Effective Date") on which an order of the Court approving the Agreement shall have become

final and not subject to appeal, certiorari, or further review. In the event this Agreement is not approved by the Court, it shall become null and void.

21. As of the Agreement Effective Date, Con Ed, Switzer, and their respective representatives, agents, and affiliates release and forever discharge the Debtor and its shareholders, members, officers, directors, employees, members, representatives, agents and affiliates forever from all claims, whether known or unknown, whether sounding in tort, contract or otherwise, whether anticipated or unanticipated, whether past or present, both in law and in equity arising from or relating to the Assigned Claims, Claim No. 30, the Adversary Proceeding Claims, and the Project, except for the Debtor's obligations under this Agreement.

22. As of the Agreement Effective Date, the Debtor and its officers, principals, shareholders, representatives, agents, and affiliates waive, release and forever discharge Con Ed and its shareholders, members, officers, directors, employees, representatives, consultants, architects, engineers, contractors (including, without limitation, S. DiGiacomo & Son, Inc.), inspectors, attorneys, agents, affiliates, and any entity or person who furnished materials or provided services in connection with the design, construction or completion of the Project (collectively, the "Con Ed Released Parties"), and Switzer and its shareholders, members, officers, directors, employees, representatives, agents and affiliates (the "Switzer Released Parties") from any and all claims, demands, obligations, change order or extra work requests, causes of action, suits, accounts, liens, debts, assignments, invoices, damages and liabilities, of any nature whatsoever, whether known or unknown, whether sounding in tort, contract or otherwise, whether anticipated or unanticipated, whether contingent or matured, both in law and in equity which Velez had, now has, or may have in the future, arising from or relating to the

Contract, the Project, any work performed in connection therewith, and the Adversary Proceeding, except for Con Ed's and Switzer's obligations under this Agreement.

23. As of the Agreement Effective Date, Switzer releases Con Ed from any and all claims underlying the Cross-Claim. Nothing in this Agreement shall be deemed to release, remise, discharge, impair, waive. abrogate, prejudice or interfere in any way with the respective rights and obligations each of them otherwise may have under (a) Purchase Order 519016, together with any modifications thereof, and/or (b) the Joint Defense, Privilege and Tolling Agreement executed by Switzer and Con Ed in October 2007. Except for the Cross-Claim (that is being dismissed with prejudice), Switzer and Con Ed each fully retains any claims and causes of action they may otherwise have against each other in connection with the Project.

24. The Court shall retain jurisdiction for the purpose of enforcing the terms of this Agreement. The Parties agree that the premises and undertakings set forth herein shall be specifically enforceable.

25. Each Party expressly recognizes that the consideration set forth herein is given by each Party in settlement of a contested matter and that neither this Agreement, the consideration specified herein, the acceptance thereof nor any other action taken in connection with this Agreement represents an admission of liability or responsibility on the part of any Party nor shall be so admissible. Each Party agrees that it is compromising claims on which the fact, liability and damages are hotly disputed, and that it has considered the likelihood of success were it to litigate such claims, the costs of such litigation, its business reasons for entering into this Agreement, including, without limitation, the concern that litigation would divert management from other business activities, and in light of the foregoing and other considerations, has

determined that the consideration it is receiving under this Agreement is valuable, fair, and reasonably equivalent to the consideration it is giving.

26.     The Parties acknowledge that no promise, inducement, or agreement not stated herein has been made to them in connection with this Agreement, and that this Agreement constitutes the entire agreement among them with respect to the subject matter hereof.  The Parties understand and agree that this Agreement may not be altered, amended, modified, or otherwise changed in any respect whatsoever except by a writing expressly stating that it is modifying this Agreement, duly executed by all Parties and approved by the Court.

27.     This Agreement may be executed simultaneously or in one or more counterparts, each of which shall be an original, but all of which together shall constitute one and the same instrument.  A facsimile copy of a signature page is the equivalent of an original signature page.

28.     This Agreement shall be governed by, construed, and enforced in accordance with the laws of the State of New York, when state law is applicable and not preempted by federal bankruptcy law, without giving effect to the provisions, policies, or principles thereof relating to choice of law or conflict of laws.

29.     Each Party represents and warrants to the other Parties that (a) it has the sole right and authority to compromise and/or surrender the claims and causes of action that are the subject of this Agreement and that it has not sold, assigned, transferred, conveyed, pledged or otherwise disposed of such claims and/or causes of action, (b) the person signing this Agreement on behalf of such Party has the authority to execute this Agreement on behalf of such Party and to bind that Party to all terms and conditions set forth herein,  and (c) it was represented by counsel of its choice in negotiating and drafting this Agreement, and no ambiguity in or dispute about the

meaning of any language in this Agreement shall be presumptively construed against the drafter, and each Party shall be considered to have participated in the drafting.

30.     This Agreement shall be binding on any and all successors and assigns of each Party, including, without limitation, any trustee that may be appointed in the Case or in any chapter 7 case to which the Case may be converted.

**IN WITNESS WHEREOF**, this Agreement is executed as of the 16th day of June, 2008.

                                        Andrew Velez Construction, Inc.

                                        By: _/s/ Norma E. Ortiz_____
                                        Title: Attorney-in-fact
                                        Dated: July 17, 2008


                                        Consolidated Edison Company of New York, Inc.

                                        By: _/s/ Lena Mandel_____
                                        Title: Attorney -in-fact
                                        Dated: June 19, 2008


                                        The Switzer Group, Inc.

                                        By: _/s/ Michele Moshe_____
                                        Title:  Attorney
                                        Dated: July 8, 2008

SO ORDERED:

August 15, 2008
New York, NY

/s/ Martin Glenn_____
United States Bankruptcy Judge

**Exhibit B**
(List of Executory Contracts and Leases)

<u>List of Executory Contracts and Leases</u>

None