ORTIZ & ORTIZ, L.L.P.                    Hearing Date: **April 28, 2009 at 10:00 a.m.**
127 Livingston Street, 2nd Floor    Objection Deadline: April24, 2009
Brooklyn, New York 11201
Tel. (718) 522-1117
Norma E. Ortiz

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

In re:                                                   Case No. 06-12765 (MG)

ANDREW VELEZ CONSTRUCTION, INC.,                         Chapter 11

                              Debtors.
--------------------------------------------------------x

## <u>NOTICE OF HEARING ON FINAL PROFESSIONAL FEE APPLICATIONS</u>


TO ALL CREDITORS OF THE DEBTOR
AND PARTIES INTEREST:

   **PLEASE TAKE NOTICE** that on **April 28, 2009, at 10:00 a.m.**, or as soon thereafter
as counsel may be heard, the Honorable Martin Glenn, United States Bankruptcy Judge, shall
conduct a hearing to consider the final requests for an award of professional fees for the
professionals listed below, pursuant to 11 U.S.C. § 330 and Fed. Rule of Bankr. Proc. 2002, at
the U.S. Bankruptcy Court, One Bowling Green, Room 501, New York, New York  10004.  The
professionals listed below were retained by Andrew Velez Construction, Inc. (the "Debtor");
their retention was approved by the Court.

| Professional | Compensation Sought | Expense Reimbursement Sought |
|---|---|---|
| Ortiz & Ortiz, L.L.P Counsel to the Debtor | $255,000.00 | $3,000.00 |
| Arent Fox, LLP Special Counsel to the Debtor | $73,850.00 | $4,686.67 |
| Castellano, Korenberg & Co. Debtor's Accountants | $72,370.00 | None |

   **PLEASE TAKE NOTICE** that you may review a copy of the fee applications at the
Bankruptcy Court Clerk's Office, at One Bowling Green, New York, New York, on the 5th floor,
during office hours on Monday through Friday, obtain a copy of the fee applications by

contacting the undersigned, or review the applications on-line for a fee at www.nysb.uscourts.gov.

      **PLEASE TAKE NOTICE** that the amounts set forth above represent professional fees and expenses incurred from no earlier than November 2006 through April 2009.  **The professionals may amend and/or supplement their requests for fees and expenses at a later date and/or prior to the hearing.**

      **PLEASE TAKE FURTHER NOTICE**, that you need not appear at the aforesaid hearing if you do not object to the relief requested in the Objection.   Please note before filing an objection that the Debtor has presently no more than $80,000 available to pay all of the professional fees requested by the professionals.

      **PLEASE TAKE FURTHER NOTICE**, that any response to the Objection must (a) be in writing and (b) must be filed with the Clerk of the Bankruptcy Court electronically at www.nysb.uscourts.gov.  If you do not have the ability to file the objection electronically, you may file the objection with the Clerk of the Court, U.S. Bankruptcy Court, One Bowling Green, New York, New York 10004.  A copy of your written objection on a 3.5 inch diskette in Word, WordPerfect or pdf format should be provided simultaneously to the Clerk of the Court.  A copy of the objection must be provided to (a) the Chambers of the Honorable Martin Glenn, (b) the Office of the United States Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004, and (c) Ortiz & Ortiz, LLP, 127 Livingston Street, Brooklyn, NY 11201, so as to be received no later than April 24, 2009.  The objection must comply with the Bankruptcy Rules and the Local Bankruptcy Rules of the court and must state with particularity the legal and factual bases for such objection.

      **PLEASE TAKE FURTHER NOTICE** that the Hearing may be adjourned without notice except as announced in open court on the Hearing Date, or at any adjourned hearing.

Dated: April 3, 2009
Brooklyn, New York

          By: _s/ Norma E. Ortiz_
              Ortiz & Ortiz, L.L.P.
              127 Livingston Street
              Brooklyn, New York 11201
              Tel. No. (718) 599-6756
              Counsel for the Debtor

UNITED STATES BANKRUPTCY COURT`
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
                                        :
In re                                   :        Case No. 06-12765 (MG)
                                        :
ANDREW VELEZ CONSTRUCTION, INC.,        :        Chapter 11
                                        :
          Debtor.                       :
                                        :
------------------------------------------------------------- x

**COVER SHEET FOR FIRST AND FINAL APPLICATION OF ORTIZ & ORTIZ, L.L.P.,
FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES
AS LEGAL COUNSEL TO THE DEBTOR IN POSSESSION**

Name of Applicant:                               Ortiz & Ortiz, L.L.P.

Authorized to Provide
Professional Services to:                        ANDREW VELEZ
                                                 CONSTRUCTION, INC.
                                                 Debtor

Period for Which
Compensation is sought:                          September 2006 through April 2009

Amount of Expense
Reimbursement Sought:                            $2,417. 47

Amount of Fees Sought:                           $ 241,845.95

Prior Award of Compensation:                     None


Dated: April 2, 2009

ORTIZ & ORTIZ, L.L.P.
127 Livingston Street, 2nd Floor
Brooklyn, New York 11201
(718) 522-1117
Norma E. Ortiz


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

In re:                                          Case No. 06-12765 (MG)

ANDREW VELEZ CONSTRUCTION, INC.,                Chapter 11

                        Debtors.
**--------------------------------------------------------x**

### FIRST AND FINAL FEE APPLICATION FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR ORTIZ & ORTIZ, L.L.P, DEBTOR'S COUNSEL

Pursuant to, among other things, 11 U.S.C. § 330, Fed. R. Bankr. P. 2016, the

Administrative Order Regarding Amended Guidelines for Fees and Disbursements for

Professionals in Southern District of New York Bankruptcy Cases dated April 19, 1995 (the

"Amended Guidelines"), the United States Trustee's Guidelines for Reviewing Applications for

Compensation and Reimbursement of Expenses Filed under 11 U.S.C. §330 (the "UST

Guidelines"), and Local Bankr. R. 2016-1, Ortiz & Ortiz, L.L.P. (the "Applicant") seeks entry of

an order approving its request for an award of $241,845.95 for final compensation and $2,417.47

for reimbursement of expenses as the above-captioned Debtor's Counsel.  In support of its

request, the Applicant states as follows:

<u>Background</u>

1.        The Debtor filed a voluntary Chapter 11 petition on November 21, 2006 (the "Filing Date"). An unsecured creditors's committee was not appointed in this case. The Debtor has remained in possession pursuant to 11 U.S.C. § 1107.

2.        The Debtor is a general contractor that has been in business for over 35 years. When the bankruptcy case was filed, the Debtor believed it was the largest minority-owned contractor of its kind in New York City.

3.        The bankruptcy filing was precipitated by, among other things, the Debtor's contractual dispute with one of its customers, the Consolidated Edison Company of New York ("Con Ed") over the completion of a $25 million public improvement project located at Con Edison's Third Avenue Yard Facility in Brooklyn, hereinafter referred to as "the Project".

4.        The Court is fully familiar with the history of the case as set forth in prior pleadings and it is not repeated herein. However, for the purpose of determining the reasonable and necessary nature of the fees sought by the Applicant, it is worth restating the following: although the Debtor had completed successfully many public improvement projects over the years, the cost of and complications of the Project severely impacted the Debtor's business. By the Filing Date, the Debtor had effectively run out of cash and was unable to continue work on the Project. The revenue generated by the Project constituted over 90% of the Debtor's revenue. It is highly likely that an unsuccessful conclusion of the case would have resulted in the Debtor's dissolution and result in little to no payment to its creditors.

5.        The Applicant rendered (and continues to render) services to the Debtor for over two years without receiving compensation from the Debtor. The modest $25,000 retainer paid to

the Applicant remains in its trust account. Moreover, as discussed below, the Applicant and the other professionals agreed to waive their right to receive the immediate payment of their fees at confirmation to permit the Debtor to provide some recovery to the unsecured creditors.

The Applicant and the Compensation Sought

6.     The Applicant was formed in 1999 and practices as a full service law firm to individual and corporate clients before the state and federal courts. Norma E. Ortiz, the partner of the Applicant responsible for the Debtor's case, was admitted to the bar of New York in 1988. Prior to joining the Applicant, Ms. Ortiz, practiced bankruptcy law exclusively as an attorney with the U.S. Trustee's Office – in New York and New Jersey -- and as a law clerk to the Hon. Arthur J. Gonzalez, United States Bankruptcy Judge, Southern District of New York.

7.     The Applicant seeks compensation for services rendered from the September 2006 through April 2009 (the "Application Period"). As set forth in the Applicant's retention application, the Applicant agreed to bill the Debtor no more than $350 an hour for partner time and $250 an hour for associate time. However, the Applicant has billed the Debtor a reduced hourly rate of $225 an hour for associate time. Moreover, with a voluntary reduction in associate time, the average hourly rate sought for associate time is less than $225 an hour.

8.     The Applicant seeks compensation for the work performed by the following attorneys and paralegals:

| Name | Position | Year Admitted | Hourly Rate |
|------|----------|---------------|-------------|
| Frank A. Ortiz | Partner | 1962 | $350.00 |
| Norma E. Ortiz | Partner | 1988 | $350.00 |
| Joel Shaefferman | Of Counsel | 1988 | $340.00 |
| Leitha Ortiz | Of Counsel | 1996 | $225.00 |

| Julio Portilla | Associate | 2007 (in N.Y.) | $225.00 |
| Martha de Jesus | Paralegal | Not Applicable | $75.00 |

Over 80% of the services rendered by the Applicant were rendered by Norma Ortiz, the partner in charge of the case. Although many hours of paralegal services were rendered by the Applicant, most of that time was not billed to the Debtor. It is respectfully submitted that the hourly rates billed by the Applicant are reasonable and are below the prevailing rates customarily charged for services rendered to Chapter 11 debtors in the Southern District of New York.

9.      The Applicant received a Twenty Five Thousand ($25,000.00) Dollar retainer, less the court filing fee, after the commencement of the bankruptcy case from Andrew Velez's son-in-law. The Applicant has not filed an interim request for fees pursuant to 11 U.S.C. § 331 and has not received any further compensation from the Debtor.

10.      The Applicant and the Debtor's accountant refrained from seeking an interim order directing payment of professional fees because of the Debtor's reduced revenue and so as not to impede the progress of its reorganization. The Applicant has Seventy-Five Thousand Dollars ($75,000.00) in its trust account to pay the fees awarded by the Court. The balance remaining shall be paid by the Debtor over a period of time.

<u>Services Rendered</u>

11.      The following is a summary of the services rendered by the Applicant during the Application period:

### A. General Bankruptcy Services

12.     The Applicant assisted the Debtor by rendering legal advice on all aspects of the reorganization process, from preliminary debtor-in-possession issues to the complexities of a potential cram-down.  These services included the preparation and filing of the petition, schedules, amended schedules and operating reports; corresponding and negotiating with creditors; exploring the possibility of DIP financing with a number of lenders; and advising the Debtor regarding the interplay of its duties as a debtor in possession and as an entity whose business is subject to state statutory law, such as the New York Lien Law.

13.     It is was necessary for the Debtor to employ additional professionals.  The Applicant prepared and submitted applications to retain Castellano, Korenberg & Co., as Debtor's Accountants and Arent Fox L.L.P. as Debtor's Special Construction Law Counsel. After Arent Fox withdrew as counsel, the Applicant assisted the Debtor in its attempts to retain replacement counsel.  In one instance, the Applicant was required to submit an order to show cause to extend the Debtor's discovery deadlines so that the Debtor could retain substitute counsel.  After substitute counsel did not undertake the engagement, the Applicant was required to perform the role played previously by Arent Fox and assist the Debtor in concluding the adversary proceeding commenced against Con Ed that is discussed below.

### B. Motion vs. Landlord to Restore Telephone & Internet Service

14.     At the inception of the case, a motion was necessary to compel the Debtor's former Landlord, AGA Creative LLC ("AGA"), to restore telephone and internet service to the Debtor.  The Debtor had operated for a number of years from an office located at 2 Park Avenue and had used the same telephone number for a substantial length of time.  The Debtor was a sub-

tenant of AGA.  The services provided to the Debtor by AGA included telephone and internet service. These services were billed directly to the Debtor.

15. When the bankruptcy case was filed, the sublease had already expired by its own terms.  The Debtor had located a new space and was scheduled to move a week after the Filing Date.  However, the new landlord refused to provide the Debtor with the new lease – probably due to the bankruptcy filing – and the Debtor had no place to relocate.  At the time, the Debtor was current with all of its monetary obligations to AGA.

16. When it became evident that the Debtor could not move on the scheduled date, the Debtor requested that AGA ensure that the Debtor's internet and telephone service was not interrupted.  On November 29, 2006, the Applicant informed AGA's counsel of this issue telephonically and in writing.  On November 30, 2006, AGA discontinued the Debtor's telephone and internet service in an attempt to oust the Debtor from the space.  The Debtor's inability to operate without its telephone and internet service required the Applicant move for immediate reinstatement of the services on December 1, 2006.  A stipulation restoring the service was entered on December 7, 2006.

### C.  Con Ed Lift Stay Motion

17. Less than three weeks after the Filing Date, on December 8, 2006, Con Ed filed a motion seeking an order lifting the automatic stay or compelling the Debtor to assume or reject the Con Ed contract ( the "Assumption Motion").  The Applicant prepared and filed opposition to the Assumption Motion and asserted that the motion should be denied since the Debtor did not have a reasonable period of time to determine whether assuming the contract would benefit the Debtor's reorganization.

18.     There were several issues Applicant researched in preparation for Debtor's opposition to the Assumption Motion, including but not limited to, the potential pre-petition breach of contract by Con Ed, the timeliness of the request by Con Ed to compel the Debtor to assume or reject the contract within six weeks of filing and during the holiday season; the validity of the allegations made in the Con Ed Motion; and the affect that rejection or assumption of the contract would have on the Debtor.  The Applicant spent additional time with the Debtor reconstructing the time line of events surrounding the Con Ed contract negotiations, the progress of the Project, and the ensuing subcontractor issues.

19.     The Court adjourned the first hearing and permitted the Debtor the opportunity to, among other things, attempt to locate a source of financing to finish the Project or another contractor that would be willing to assist the debtor in completing the Project.  The Applicant advised the Debtor during this period and researched a number of issues pertaining to the ramifications of rejecting the contract under the circumstances of the case.  The Applicant negotiated a stipulation with Con Ed rejecting the contract.   An order was signed by the Court on January 31, 2007.

### D.     Adversary Proceeding Against Con Ed

20.     For the remainder of the case through confirmation, most of the Applicant's legal services arose from the Debtor's continued dispute with Con Ed that was memorialized in the adversary proceeding commenced against Con Ed.   Prior to the retention of Arent Fox as special construction litigation counsel, the Applicant advised the Debtor on the many issues underlying the Debtor's dispute with Con Ed.  For example, one of the legal issues that required extensive due diligence and research by the Applicant arose from the Project funds paid to the

Debtor by Con Ed and Con Ed's retention of a portion of the funds due to the Debtor. Since these funds could have been deemed trust funds under New York's lien law, they must be administered in strict compliance with that law. Moreover, since trust funds held for the benefit of subcontractors and material men are not property of a debtor's bankruptcy estate, it was crucial to the proper administration of the case that the Debtor determine whether any of the funds sought by the Debtor from Con Ed could be deemed trust funds.

21.     The Applicant assisted Arent Fox in preparing the complaint against Con Ed that included no less than eight causes of action, including claims for violations of the New York State Debtor and Creditor Law, fraudulent conveyance, fraud in the inducement, breach of contract, interference with a contract, Lien Law Article 3-A Trust Fund violations, unjust enrichment, defamation, and negligence.

22.     The Debtor requested that the Applicant move for summary judgment on the fraudulent conveyance claim. This claim was based, in part, on the argument that when the Debtor entered into a modification agreement with Con Ed, in which it waived claims in exchange for a modification of the contract, it received inadequate consideration for its release of those claims. At the time the Debtor made that request, it believed this issue was crucial to the success of its claims against Con Ed because the releases contained in the modification agreement could limit substantially the Debtor's recovery of damages.

23.     The Applicant spent many hours researching and preparing this motion because, among other things, it raised relatively thorny and complex procedural and substantive issues of law. For example, the adequacy of the consideration provided by Con Ed was difficult to quantify. Moreover, although the Debtor received, among other things, a $500,000 payment

under the agreement, the Debtor believed the funds were paid with monies already earned by the Debtor and did not constitute adequate consideration. Although the Applicant advised the Debtor that their was a strong possibility the Court could find that such a motion raised disputed issues of fact – thereby precluding summary judgment – the Debtor felt duty bound to its creditors to make such a motion since it could result in a more expeditious resolution of the adversary proceeding and a greater recovery to creditors.

24.     In July 2007, Con Ed filed a Motion to Enlarge Time to Respond to the Adversary Complaint with a Motion to Dismiss Certain Counts of the Adversary Complaint. On July 13, 2007, the Applicant requested an adjournment of the Pre-Trial Conference and the motion and requested permission to file the Motion for Summary Judgment.

25.     The Applicant and Arent Fox researched and prepared the Debtor's opposition to the motion to dismiss and a supporting memorandum of law. At the pre-trial hearing, Con Ed's motion to dismiss was granted in part and denied in part. But the Debtor's request to file the summary judgment motion was denied.

26.     The summary judgment motion, which was never filed with the court, was lengthy and required extensive services from the Applicant. The draft of the motion, memorandum of law, and supporting declaration exceeded 45 pages. The Applicant was required to conduct extensive research and drafting of this document. In fact, all of the services rendered by the Applicant on the Motion are not reflected in the attached time records. However, it is respectfully submitted that it was a prudent and reasonable decision by the Debtor to pursue this course of action, since the success of the motion could have been very beneficial to the estate. Moreover, much of the research and preparation conducted by the Applicant was

necessary to prosecution of the adversary proceeding generally. For example, many of the arguments presented in the summary judgment motion were utilized during the Debtor's settlement negotiations with Con Ed.

27.     On September 7, 2007, the Applicant filed an amended complaint. Con Ed filed an answer with counterclaims on September 27, 2007. The Applicant and Arent Fox prepared and filed an answer to the counterclaims on October 17, 2007.

28.     In addition, Con Ed filed a motion to dismiss the defamation count of the amended complaint and memorandum of law. Applicant assisted Arent Fox in opposing that motion. A reply was filed by Con Ed but was stricken by the Court. The motion to dismiss the defamation count was denied in part and granted in part.

29.     During this time, Applicant partook in the discovery process and continued to attempt to settle with Con Ed. The parties agreed to a stay of the litigation to attempt mediation.

30.     After selecting a mediator, the parties agreed to prepare statements for the mediator. The Applicant reviewed Con Ed's statement, researched the issues raised therein, and prepared a statement on the Debtor's behalf.

31.     The mediator, a noted authority on construction law, conducted a 12 hour mediation among the Debtor, Con Ed, and the Debtor's lender on February 20, 2008. The mediator concluded that the matter could not be mediated and the parties left without a settlement.

**E.     Resumption of Litigation and Settlement**

32.     Without a settlement, the Debtor was forced to proceed with the adversary proceeding. However, by this time, the Debtor's revenue had dropped significantly because it

was unable to obtain new contracts while under the protection of the Court. Arent Fox sought to withdraw as counsel and the Debtor was forced to locate replacement counsel. The Debtor interviewed a number of firms, but had difficulty locating a firm willing to undertake such complex litigation under the Debtor's circumstances. In April 2008, the Applicant prepared a motion to retain Geltner & Associates as substitute special counsel and to extend the discovery deadlines. Con Ed objected to the retention and contacted the Court by letter regarding the Debtor's obligations under the Discovery Stipulation. The Applicant responded to this letter.

33.     The Court conducted a Case Management Conference on April 10, 2008, and granted Applicant's motion to extend the discovery deadlines and Arent Fox's motion to withdraw as counsel. However, Geltner & Associates did not undertake the representation. Therefore, the Applicant and the Debtor's in-house counsel negotiated a settlement of the adversary proceeding that served as the basis for the Debtor's Plan of Reorganization and emergence from Chapter 11. The settlement provided, in relevant part, that Con Ed would pay the Debtor Two Hundred and Twenty-Five Thousand Dollars ($225,000.00) in exchange for the Debtor's discontinuance of the action and mutual releases. Of that amount, Seventy Five Thousand Dollars ($75,000.00) was earmarked to pay the Debtor's professional fees. The Applicant prepared a motion to approve the settlement and negotiated and prepared the stipulation with Con Ed embodying the terms of the settlement. The settlement included Con Ed's agreement to waive its right to receive payment of its $18 million unsecured claim under the Plan.

**F.     Settlement Negotiations with Secured Lender NYNB**

34.     In addition to the numerous issued related to the Con Ed dispute, the Debtor had

to contend with the secured claim of its pre-petition lender New York National Bank ("NYNB"). NYNB filed a secured proof of claim against the Debtor for over $750,000 and asserted a lien on all of the assets.

35.     Throughout the case, the Applicant was in continuous talks and negotiations with NYNB for a number of reasons.  The Debtor attempted to obtain DIP financing from NYNB on a number of occasions.  Moreover, NYNB represented a consortium of four lenders.  Therefore, whenever a request was made of NYNB, four entities had to consent to the request.  Since there was no creditors' committee, the Applicant was the only representative of the Debtor to address the issues raised by NYNB.  Furthermore, there were many issues raised by NYNB, the Debtor, and Con Ed over the validity of the liens filed by NYNB and the assets - if any - that were subject to those liens.  For example, when the Debtor negotiated the settlement with Con Ed, NYNB asserted that it had a lien on the settlement proceeds.  Over the course of several months, the  Applicant actively negotiated a settlement with NYNB that was a cornerstone of the Debtor's plan.  NYNB agreed to accept Seventy-Five Thousand ($75,000.00) Dollars in full satisfaction of its secured claim.

### G.     Chapter 11 Plan (Drafting, Amendment and Confirmation)

36.     The Applicant filed five motions to extend the Debtor's exclusive period to file a plan under Bankruptcy Code section 1121(d).  Con Ed filed a response to a number of the motions, but they were all granted.

37.     The Applicant prepared and filed the Debtor's first Chapter 11 Plan of Reorganization on September 25, 2008.  On October 29, 2008, the Applicant prepared and filed the Debtor's First Amended Plan and an Ex Parte Motion to (A) Approve the Disclosure

Statement;(B) Schedule a combined Hearing for Final Approval of the Disclosure Statement and Confirmation of the Plan of Reorganization; (C) Establishing Procedures for Solicitation of Ballots; and (D) Related Relief. The Ex Parte Motion was granted on November 14, 2008, and a hearing on confirmation of the plan was schedule for December 10, 2008.

38. On November 18, 2008, the Applicant prepared and filed Debtor's Second Amended Plan and First Amended Disclosure Statement. A letter reflecting the amendments to the Second Amended Plan of Reorganization was filed on December 10, 2008.

39. On December 9, 2008, the Applicant prepared and filed a Certification of Ballots and a Declaration of Elizabeth Velez in Support of the Plan. A letter regarding the Certification of Ballots was also filed on December 9, 2008.

40. The Applicant attended the Confirmation Hearing on December 10, 2008, and sought the Court's approval of its Third Amended Plan of Reorganization. The Debtor's Third Amended Plan was filed on December 10, 2008, along with a letter outlining the amendments to the Second Plan that were contained in the Third Amended Plan.

41. An Order was signed on January 8, 2009, approving the adequacy of the information contained in the First Amended Disclosure Statement and Confirming Debtor's Third Amended Plan of Reorganization. The order was restated on January 16, 2009.

42. The Debtor's Third Amended Plan of Reorganization provided for Seventy-Five Thousand ($75,000) Dollars to be paid to satisfy NYNB's secured claim, Twenty-Five Thousand ($25,000) Dollars to be paid to all unsecured claims, and Seventy-Five Thousand ($75,000) Dollars to be paid to the professional's administrative claims. The source of the funds were the proceeds of the settlement agreement with Con Ed. The Debtor had no other funds to pay

13

creditors.

H.    **<u>Claims Review and Creditor Issues</u>**

43.    The Applicant prepared a bar date application and obtained an order deeming September 28, 2007, the Bar Date for Filing Proofs of Claim.  Thirty-four (34) claims were timely filed and three (3) claims were filed thereafter.  Several of the claims are disputed claims.

44.    Pursuant to the Third Amended Plan of Reorganization, the Applicant distributed the funds to NYNB for their secured claim, computed the first pro rata distribution to the unsecured creditors, and distributed plan payments to the unsecured creditors that did not have disputed claims.  The Applicant intends to object to the remaining disputed claims within sixty days of the Effective Date of the Plan and distribute the remainder of the funds after the objection is decided by the Court.

45.    The Applicant reviewed all existing Liens against the Debtor, including mechanics liens, judgments and UCC financial statements.  A search of the adversary filings against the Debtor revealed almost 200 such documents filed against the Debtor.  The Applicant has negotiated the release of some of the UCC financial statements and contacted the lien holders in an attempt to have them remove the liens that have been discharged in the plan without the Court's intervention.

<u>Compensation and Reimbursement of Expenses Sought</u>

46.    The Applicant submits that the services rendered were necessary and the amount of fees sought is reasonable for the work performed and results achieved by the Applicant.  The Applicant was instrumental in assisting the Debtor in overcoming many obstacles to the Debtor's reorganization as a result of the Con Ed dispute, negotiating settlement agreements with the

Debtor's largest creditors to ensure confirmation of the plan, and providing counseling to the Debtor on a myriad of issues, often under emergent circumstances.

47.     Moreover, the Applicant incurred many hours 1) corresponding with the Debtor, Con Ed's counsel, and NYNB's counsel, 2) researching state and bankruptcy law, 3) and drafting documents for which it has not sought compensation.  In addition, the Applicant has not sought reimbursement for all of the expenses incurred on the Debtor's behalf, such as for legal research charges and court search charges.

48.     Annexed hereto as Exhibit A is a list of the services rendered by the Applicant in chronological order.  Annexed hereto as Exhibit B is a list of the services rendered by the Applicant in a categorical fashion.  The attached time records were created on or about the time the services were rendered to the Applicant; time was billed in six minute increments.

49.     Annexed hereto as Exhibit C is a list of the reimbursable expenses sought by the Applicant.  As set forth therein, the Applicant does not seek reimbursement of expenses commonly billed, such as most of the photocopies produced by the Applicant and facsimile transmission charges.

50.     Annexed hereto as Exhibit D is a Declaration of Norma E. Ortiz, Esq., as required by the Amended Guidelines, that provides in detail that the instant application complies in almost all respects with, among other things, the Amended Guidelines, the UST Guidelines, 11 U.S.C. § 330, and Fed. R. Bankr. P. 2014.

51.     Based upon the foregoing, it is respectfully submitted that the Applicant has demonstrated that the fees and expenses sought are both reasonable and necessary and contributed to the effective administration of the Debtor's case.  Section 330(a)(1) of the

Bankruptcy Code provides in relevant part that a bankruptcy court may award reasonable compensation for actual and necessary services rendered by an attorney and by a paraprofessional person employed by an attorney and reimbursement of actual and necessary expenses. A court's determination of the reasonableness of the services provided should be done in an "objective manner, based upon what services a reasonable lawyer or legal firm would have performed." In re Ames Dep't Stores, 76 F.3d 66, 72 (2d Cir. 1996). Since what is reasonable depends upon the circumstances of each case, some of the common factors considered by the courts that are applicable to this case, as set forth in In re First Colonial Corp. of America, 544 F.2d 1291, 1294 (5th Cir. 1977), include:

         ---     the amount of time and labor devoted by the firm

         ---     the amount of fees involved and the results achieved

         ---     the novelty and difficulty of the questions presented

         ---     the skill requisite to perform properly the legal services

         ---     the preclusion of other employment on behalf of other clients

         ---     awards in similar cases

52. Applying these factors to the instant case supports a finding of reasonableness and a full award of the fees requested. When the Debtor requested the Applicant represent it in its bankruptcy case, the Debtor informed the Applicant that its intent was to attempt to utilize the process to negotiate a settlement with Con Ed that would enable the Debtor to complete the Project and pay the claims of creditors through the Project revenue: at the time, the Debtor had no intention of seeking to reorganize or commence litigation against Con Ed in its Chapter 11 case. The Applicant's retainer reflected the Debtor's intent to emerge from Chapter 11 relatively

quickly. Instead, the Applicant – a small firm with limited support and professional staff – effectively funded the Debtor's two year bankruptcy case by rendering services without any compensation or reimbursement of expenses. During the periods of time in which a significant amount of legal services were required, such as during the periods in which the summary judgment motion was drafted, the assumption motion was brought by Con Ed, and the plan of reorganization and disclosure statement was drafted and proposed, the Applicant was precluded from undertaking employment on behalf of other clients. Moreover, the Applicant devoted extensive time and labor on the Debtor's behalf to achieve confirmation of a plan under very difficult circumstances.

54.    Given the contentious nature of the Debtor's dealings with Con Ed throughout most of the case, it is submitted that the fees sought are below those customarily sought for a case of this size and nature. In addition, the Court should consider the contribution made by the Applicant and the other professionals when they waived their right to seek  full payment of their fees as a condition to confirmation of the plan so as to permit the Debtor to emerge successfully from Chapter 11 and provide unsecured creditors with some return. For these reasons, the amount of fees sought is  wholly reasonable in the light of the results achieved by the Applicant, the complexity of the issues posed by the Con Ed adversary proceeding, and in comparison to the fees sought in cases of similar size and complexity.

WHEREFORE, the Applicant respectfully requests that the Court enter an order (i) granting the Applicant a final award of compensation of $ 241,845.95 for professional services rendered to or on behalf of the Debtor during the Application Period;  (ii) granting the Applicant a final award of $2,417. 47 as reimbursement of expenses incurred on behalf of the Debtor; (iii)

authorizing and directing the Debtor to pay the sums awarded pursuant to the terms of the

Debtor's Third Amended Plan of Reorganization; and (iv) granting such other and further relief

as the Court deems just and appropriate.

Dated: Brooklyn, New York
    April 3, 2009                        *S/Norma E. Ortiz*
                                         Norma E. Ortiz
                                         Ortiz & Ortiz, L.L.P.
                                         127 Livingston Street
                                         Brooklyn, New York 11201
                                         Norma E. Ortiz (NO 4748 )
                                         Tel. No. (718) 522-1117